IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

KILOH SMITH, *Plaintiff/Appellant*,

*v.*

TARGET CORPORATION, et al., *Defendants/Appellees*.

No. 1 CA-CV 25-0120

FILED 11-13-2025

Appeal from the Superior Court in Maricopa County
No. CV2024-025462
The Honorable M. Scott McCoy, Judge, *Retired*

**AFFIRMED**

COUNSEL

Gilbert & Sackman, a Law Corporation, Phoenix
By Gerald Barrett
*Co-Counsel for Plaintiff/Appellant*

Bursor & Fisher, P.A., New York, New York
By Yitzchak Kopel *(Pro Hac Vice)*
*Co-Counsel for Plaintiff/Appellant*

Jones, Skelton & Hochuli P.L.C., Phoenix
By Jefferson T. Collins, Justin M. Ackerman
*Co-Counsel for Defendants/Appellees*

Fredrikson & Byron, P.A., Minneapolis, Minnesota
By Leah C. Janus, Natasha T. Robinson, Sarah Theisen *(Pro Hac Vice)*
*Co-Counsel for Defendants/Appellees*

## OPINION

Judge Andrew J. Becke delivered the opinion of the Court, in which Presiding Judge David B. Gass and Judge Michael J. Brown joined.

**B E C K E**, Judge:

¶1        Kiloh Smith appeals the superior court's dismissal of his claim against Target Corporation and Target Stores, Inc. ("Target"). For reasons that follow, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        In 2024, Smith filed a class action complaint in superior court alleging a violation of A.R.S. § 44-1376.01, Arizona's Telephone, Utility and Communication Service Records Act ("TUCSRA"). Smith claimed Target embedded spy pixels[1] in its marketing emails that were designed to extract email data without his consent, including when he opens the email and if he forwards the email.

¶3        Target moved to dismiss, arguing (1) the superior court lacked personal jurisdiction over Target; (2) Smith lacked standing; (3) Smith failed to state a claim because A.R.S. § 44-1376.01 does not apply to Target nor the specific facts in the complaint; and (4) Smith's claim was preempted by federal law, the CAN-SPAM Act. 15 U.S.C. § 7701 *et seq.*

¶4        After full briefing and oral argument, the court dismissed Smith's complaint with prejudice. The court found persuasive the United States District Court for the District of Arizona's analysis from *Carbajal v. Home Depot U.S.A., Inc.*, No. CV-24-00730-PHX-DGC, 2024 WL 5118416 (D. Ariz. Dec. 16, 2024). Analyzing the same issues as in *Carbajal*, the court held: "[i]n short, 'sending marketing emails and collecting information through tracking pixels—simply is not covered by the [statute].'"

---

[1] Smith describes spy pixels as a "1x1 (one pixel high by one pixel long) image" inserted into an email and alleges they collect certain information about email activity.

**¶5** Smith timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), -2101(A)(1).

## DISCUSSION

**¶6** Smith raises two arguments on appeal. First, he argues the superior court "erroneously ignored the plain text and misconstrued" A.R.S. § 44-1376.01 and improperly dismissed his complaint for failure to state a claim. Smith also takes issue with the court's finding that he did not have standing to bring his claim.

**¶7** We review *de novo* the dismissal of a complaint under Arizona Rule of Civil Procedure 12(b)(6). *Coleman v. City of Mesa*, 230 Ariz. 352, 355, ¶ 7 (2012). In doing so, we "assume the truth of all well-pleaded factual allegations and indulge all reasonable inferences from those facts." *Id.* at 356, ¶ 9. We review issues of standing, *Mills v. Ariz. Bd. of Tech. Registration*, 253 Ariz. 415, 420, ¶ 10 (2022), and interpret the meaning of statutes *de novo*, *Haag v. Steinle*, 227 Ariz. 212, 214, ¶ 9 (App. 2011).

**¶8** Unless directed otherwise, we interpret statutes "according to the plain meaning of the words in their broader statutory context." *S. Ariz. Home Builders Ass'n v. Town of Marana*, 254 Ariz. 281, 286, ¶ 31 (2023). Statutory terms must be given their "commonly accepted meanings, 'unless the legislature has offered its own definition of the words or it appears from the context that a special meaning was intended.'" *Planned Parenthood Ariz., Inc. v. Mayes*, 257 Ariz. 137, 142, ¶ 16 (2024) (quoting *State v. Reynolds*, 170 Ariz. 233, 234 (1992)).

**¶9** The relevant TUCSRA provision, A.R.S. § 44-1376.01(A)(1), states:

> A person shall not . . . [k]nowingly procure, attempt to procure, solicit or conspire with another to procure a . . . communication service record of any resident of this state without the authorization of the customer to whom the record pertains or by fraudulent, deceptive or false means.

"Communication service record" includes:

> subscriber information, including name, billing or installation address, length of service, payment method, telephone number, electronic account identification and associated screen names, toll bills or access logs, records of the path of

an electronic communication between the point of origin and the point of delivery and the nature of the communication service provided, such as caller identification, automatic number identification, voice mail, electronic mail, paging or other service features.

A.R.S. § 44-1376(1).

¶10 A brief review of Arizona's statutory history surrounding "communication service records" is key to analyzing TUCSRA. Seven years before TUCSRA was passed, Arizona amended the Eavesdropping and Communications Act ("ECA"). 2000 Ariz. Sess. Laws, ch. 189, § 22 (2nd Reg. Sess.) (H.B. 2428). The amendment authorized prosecutors to subpoena "communication service records" from "communication service providers." A.R.S. § 13-3018. Six years later, Arizona passed the Telephone Records Act ("TRA") which prohibited third parties from fraudulently procuring telephone records from telephone companies. 2006 Ariz. Sess. Laws, ch. 260, § 1 (2nd Reg. Sess.) (H.B. 2785). The next year, Arizona amended the TRA to also protect "communication service records" and public utility records and lifted the definition of "communication service records" verbatim from the ECA, thus becoming TUCSRA. 2007 Ariz. Sess. Laws, ch. 210, § 2 (1st Reg. Sess.) (H.B. 2726).

¶11 Statutes that are of the "same subject or general purpose . . . should be read together and harmonized." *David C. v. Alexis S.*, 240 Ariz. 53, 55, ¶ 9 (2016). Both TUCSRA and the ECA regulate the protection of "communication service records," defined by identical language. *Compare* A.R.S. § 13-3018(G) *with* A.R.S. § 44-1376(1). Because we presume "the legislature knows the existing laws when it enacts or modifies a statute," *Planned Parenthood Ariz., Inc.*, 257 Ariz. at 142, ¶ 15, we will construe TUCSRA and the ECA together and "harmonize statutory provisions and avoid interpretations that result in contradictory provisions," *Bekelian v. JP Morgan Chase Bank NA*, 246 Ariz. 352, 354, ¶6 (App. 2019).

¶12 The dispositive issue here is whether the information Target allegedly extracted is a "communication service record" protected by TUCSRA. Smith argues "access logs" include when he accesses his emails. Specifically, Smith defines "access" to mean "to open or load" and "log" to mean "to make a note or record of," and argues this includes when he opens his emails. Smith also argues the plain meaning of "records of the path of an electronic communication" includes tracking whether an email is forwarded. A few months after *Carbajal*, the Arizona federal district court again grappled with this issue. *See Williams v. Pac. Sunwear of California LLC*,

CV-24-02015-PHX-JJT, 2025 WL 1135160 (D. Ariz. Apr. 16, 2025). We find the analysis in both cases to be persuasive.

¶13        TUCSRA protects public utility records, telephone records, and communication service records. A.R.S. § 44-1376.01(A)(1). "Communication service records" include *subscriber* information—indicating a relationship between the individual and a communication service entity. *See Williams*, slip op. at *4; *Carbajal*, slip op. at *4. The "entity" is explicitly defined in the ECA as a "communication service provider"—any person that provides a service allowing its users "to send or receive oral, wire or electronic communications or computer services." A.R.S. § 13-3001(3). Public utility records and telephone records are also defined by their relationship—namely between the customer and the public utility or the telephone company. *See Williams*, slip op. at *3; *Carbajal*, slip op. at *4; A.R.S. § 44-1376(3), (4), (6), (7).

¶14        Based on this statutory language, TUCSRA is "designed to safeguard customer records held by (1) telephone companies, (2) public utilities, and (3) communication service providers." *Williams*, slip op. at *3; *accord Carbajal*, slip op. at *4. It does so by requiring these entities to "implement reasonable measures to prevent 'unauthorized or fraudulent disclosure of [telephone, public utility, and communication service] records that could result in a substantial harm or inconvenience to any customer," *see Williams*, slip op. at *3 (alteration in original) (quoting A.R.S. § 44-1376.01(B)), and by both giving customers the ability to bring a civil action against violators and making a violation of the statute a class 1 misdemeanor, A.R.S. §§ 44-1376.04(A), -1376.05.

¶15        TUCSRA aims to regulate entities that provide "infrastructure and services enabling communication," and while "any person" can violate the statute, "this does not expand what constitutes a 'communication service record.'" *Williams*, slip op. at *4. "Communication service record" does not merely include categories of information but rather refers to records about subscribers maintained by communication service providers. *Id.*; *accord Carbajal*, slip op. at *4. "The Arizona legislature could expand [] TUCSRA to cover information gathered by marketing emails . . . but it has not done so." *Carbajal*, slip op. at *4.

¶16        As for Smith's claims regarding "access logs" and "records of the path of an electronic communication between the point of origin and the point of delivery," the plain meaning within the statutory framework is unambiguous. Divorcing "access" and "log" from their statutory context "disregards the context that shapes the meaning of these terms within the

statutory framework." *Williams*, slip op. at *5. Because communication service records are held by a communication service provider, "access logs" refers to records of when a subscriber accesses the communication services—"not marketing metrics collected by retailers about email engagement." *Id.*

¶17    Furthermore, "records of the path of an electronic communication between the point of origin and the point of delivery" does not include whether Target's marketing email is forwarded. The "point of origin" is Target and the "point of delivery" is Smith. Any further action post-delivery is not included in the statute's plain meaning.

¶18    Logs of email access, logs of associated email addresses, email client types, email path data, recipient locations, IP addresses, email forwarding data, and device information collected from a spy pixel on a marketing email from Target are neither "access logs" nor "records of the path of an electronic communication between the point of origin and the point of delivery." And because Smith does not allege that he is subscribed to a communication service provider nor that Target unlawfully procured his subscriber information from a communication service provider, Smith's claims are not covered by TUCSRA. Thus, we need not address whether he has standing.

## CONCLUSION

¶19    We affirm the superior court's ruling. As the successful party on appeal, Target is entitled to recover taxable costs upon compliance with ARCAP 21. *See* A.R.S. § 12-342(A).

